28 F.3d 802
 Jessie TILSON, Appellee,
v.
FORREST CITY POLICE DEPARTMENT; Joe Goff, Chief, Appellants.
Jessie TILSON, Appellant,
v.
FORREST CITY POLICE DEPARTMENT; Joe Goff, Chief; Bill
Dooley, Sgt., Individually and in his official capacity;
Dewey Ramsey, Officer, Individually and in his official
capacity; Dave Parkman, Sheriff, Individually and in his
official capacity, Appellees.
 Nos. 93-1204, 93-1324.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 16, 1993.
Decided July 5, 1994.
 
 Fletcher Long of Forrest City, AR, argued (Gary J. Mitchusson, on the brief), for appellant.
 Alvin Lenoard Simes of West Helena, AR, argued, for appellee.
 Before MAGILL, Circuit Judge, LAY, Senior Circuit Judge, and HANSEN, Circuit Judge.
 MAGILL, Circuit Judge.
 
 
 1
 The Forrest City Police Department (the Department) and Chief of Police Joe Goff (Goff) appeal the district court's denial of their posttrial motions for judgment as a matter of law[1] and for a new trial. In this 42 U.S.C. Sec. 1983 action, the jury found the Department and Goff to have violated the constitutional rights of Jessie Tilson (Tilson). We find that as a matter of law this verdict lacked a "legally sufficient basis for a reasonable jury to have found for [Tilson]." See Fed.R.Civ.P. 50(a). Hence, we reverse, finding that the district court erred when it denied the motion for judgment as a matter of law.
 
 I. BACKGROUND
 
 2
 The facts underlying Tilson's claim are disturbing. Tilson was arrested on April 4, 1989, by two Forrest City police officers, Bill Dooley and Dewey Ramsey, and taken to the St. Francis County jail.[2] Dooley and Ramsey testified at the trial that they arrested Tilson as a Missouri parole violator,[3] while investigating Tilson in association with a recent murder.
 
 
 3
 On April 17, 1989, while still in the jail, Tilson was arrested for murder on a warrant issued by an Arkansas Circuit Judge. Bond was set on the warrant at $50,000. Such a warrant can be issued upon a finding by the judicial officer that there is reasonable cause to believe an offense has been committed and that the person to be arrested committed it. Ark.R.Crim.P. 7.1(b). On April 19, 1989, Tilson appeared before a municipal court judge who bound him over to the circuit court. The record is unclear as to whether at that time Tilson received a probable cause hearing pursuant to Arkansas Rule of Criminal Procedure 8.3.[4] The county prosecutor, aware that Tilson was incarcerated, never attempted to indict Tilson, file an information, or take steps to release Tilson.
 
 
 4
 Tilson remained in the St. Francis County jail for the next fourteen months, next appearing in court on June 11, 1990.[5] On that day, pursuant to a newly filed petition for habeas corpus, Tilson was released, never charged with any crime.
 
 
 5
 This 42 U.S.C. Sec. 1983 action was brought by Tilson claiming that Officers Dooley and Ramsey violated Tilson's constitutional rights through the following acts: arresting him without probable cause,[6] questioning him without an attorney, and failing to conduct properly the criminal investigation. Liability for Goff and the Department was premised on their failure to act to prevent Tilson's continued unlawful incarceration. The suit originally included the St. Francis County Sheriff's Department and the St. Francis County Sheriff; however, these parties were dismissed pursuant to a grant of summary judgment.
 
 
 6
 The jury found that neither Dooley nor Ramsey had violated Tilson's constitutional rights.[7] It did, however, return a verdict against both the Department and Goff (collectively, the defendants). The defendants filed motions for judgment as a matter of law and for a new trial. The district court denied both motions, and the defendants timely appealed.[8]
 
 II. DISCUSSION
 
 7
 An appellate court reviews a district court's denial of a posttrial motion for judgment as a matter of law under the same standard utilized by the district court. Morgan v. Arkansas Gazette, 897 F.2d 945, 948 (8th Cir.1990). The appeals court must consider the evidence in the light most favorable to the prevailing party and "affirm the denial of the motion if reasonable persons could differ as to the conclusions to be drawn from it." Id. Bearing in mind the deference accorded by this standard to a jury verdict, we still must reverse because assuming all the evidence was believed by the jury, the evidence was nonetheless insufficient to have found the defendants liable under Sec. 1983.
 
 
 8
 For the jury to have found the Department or Goff liable in this Sec. 1983 action, it must have had before it evidence of their direct participation in a constitutional deprivation. Cf. Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (respondeat superior cannot form the basis for liability under Sec. 1983). Simply put, the evidence before this jury must have allowed it to identify (1) action on the part of Goff or the Department causing (2) one or more constitutional violations.
 
 A. Liability under Section 1983
 1. Goff's Liability
 
 9
 A supervisor, such as Goff, may be held liable under Sec. 1983 if he directly participated in the constitutional violation, see Webster v. Gibson, 913 F.2d 510, 514 (8th Cir.1990),[9] or if his failure to train or supervise the offending actor caused the deprivation,[10] see City of Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204-05, 103 L.Ed.2d 412 (1989) (alleging failure to train); Bolin v. Black, 875 F.2d 1343, 1347 (8th Cir.) (alleging failure to supervise), cert. denied, 493 U.S. 993, 110 S.Ct. 542, 107 L.Ed.2d 539 (1989). The standard of liability for a failure to train police officers is deliberate indifference. City of Canton, 489 U.S. at 388, 109 S.Ct. at 1204-05. The standard of liability for failure to supervise is "demonstrated deliberate indifference or tacit authorization of the offensive acts." Bolin, 875 F.2d at 1347.
 
 2. The Department's Liability
 
 10
 For the Department to be liable under Sec. 1983 for a constitutional violation, a claimant must show that
 
 
 11
 the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the Department] or that a constitutional deprivation [was] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.
 
 
 12
 Marchant v. City of Little Rock, 741 F.2d 201, 204 (8th Cir.1984) (quoting Monell, 436 U.S. at 690, 98 S.Ct. at 2035-36) (internal quotations omitted).
 
 
 13
 The inaction or laxness alleged by Tilson, lack of written procedures,[11] was not "officially adopted or promulgated." However, inaction or laxness can constitute government custom if it is permanent and well settled. See Monell, 436 U.S. at 691, 98 S.Ct. at 2036. Such a government custom of laxness or inaction must be the moving force behind the constitutional violation. Id. at 694, 98 S.Ct. at 2037-38.
 
 B. Constitutional Violations
 
 14
 Tilson's complaint alleges the following constitutional violations: (1) arrest without probable cause, (2) unlawful incarceration for fourteen months, and (3) questioning him without an attorney and a valid waiver of his rights.[12] We consider Tilson's allegations in turn.
 
 1. Arrest without Probable Cause
 
 15
 Tilson's primary allegation at trial was that both the April 4 and the April 17 arrest were unsupported by probable cause. Although the jury found that neither Dooley nor Ramsey violated Tilson's constitutional rights, we nevertheless will consider these allegations.[13] To establish the liability of Goff or the Department for an unlawful arrest, Tilson must have offered evidence to the jury allowing it to infer that Goff knowingly and directly participated in an arrest without probable cause, or that Goff's failure to train or supervise his subordinates or a custom of the Department caused the unlawful arrest. See Monell, 436 U.S. at 694, 98 S.Ct. at 2037-38.
 
 
 16
 An examination of the record offers no such evidence. Tilson merely established that Goff knew of Tilson's arrests and incarceration. Tilson offered no evidence which would have allowed the jury to have inferred that Goff's or the Department's actions caused an arrest without probable cause. Had Tilson shown that Goff was "deliberately indifferent" to the use by Dooley or Ramsey of illegal methods of obtaining an arrest warrant, this would have been sufficient evidence to sustain the jury verdict against Goff. However, here, all we have is Goff's knowledge that Tilson had been arrested and a lack of written procedures. This evidence is as a matter of law insufficient to impose liability under Sec. 1983.
 
 2. Deprivation of Liberty
 
 17
 Two inquiries control liability for Tilson's deprivation of liberty: Was Tilson unconstitutionally deprived of his right to liberty;[14] and, if so, were either Goff or the Department responsible for causing the deprivation?
 
 
 18
 We decline to reach the first question, see Jean v. Nelson, 472 U.S. 846, 854, 105 S.Ct. 2992, 2997, 86 L.Ed.2d 664 (1985) ("Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision.") (internal quotes and citations omitted), because there was no evidence before this jury that any policy or custom of the Department or any direct action, failure to supervise, or failure to train on the part of Goff caused or was the moving force behind Tilson's deprivation of liberty. See Monell, 436 U.S. at 694, 98 S.Ct. at 2037-38. To the contrary, the only relevant evidence before this jury was that Goff knew Tilson was incarcerated and that neither the Department nor Goff promulgated any written procedures to guide a criminal investigation. Section 1983 requires more. Tilson must have shown that Goff's lack of action caused Tilson's deprivation of liberty. As to the Department, Tilson must similarly have shown some departmental custom was the moving force behind Tilson's incarceration.
 
 
 19
 The facts before this jury indicated that Goff knew Tilson was incarcerated in the St. Francis County jail[15] and that the Department lacked written procedures. Tilson did not establish that the police failed to follow proper procedures when they arrested Tilson and brought him to the St. Francis County jail. Tilson did not establish that a different police procedure might have caused a probable cause hearing to have occurred promptly. Significantly, Tilson did not establish that Goff or the Department "held" Tilson in the St. Francis County jail. See supra note 9. The only connection Goff and the Department had with Tilson's detention related to their supervision of the arresting and investigating officers. We find that the evidence presented to the jury was insufficient as a matter of law to find that either the Department or Goff caused Tilson's incarceration.
 
 
 20
 Because we find there was no legally sufficient basis upon which to hold either the Department or Goff liable for the deprivations inflicted on Tilson, we reverse the denial of the motion for judgment as a matter of law.[16] Notwithstanding this holding, we are deeply offended by the substantial deprivations borne by Tilson. Moreover, it appears that at least one of the actors responsible for Tilson's deprivation of liberty was never a party to this action: the Arkansas prosecutor who failed to charge Tilson with a crime or to bring him to trial.[17]
 
 
 21
 Although under our jurisprudence we cannot preserve a right of recovery for Tilson, we urge Arkansas to prevent a reoccurrence of this loss. The Arkansas Rules of Criminal Procedure do not mandate a time period within which a detainee must receive a preliminary hearing or an arraignment. In contrast, the Federal Rules of Criminal Procedure mandate a preliminary hearing within ten days of an incarcerated arrestee's initial appearance. Fed.R.Crim.P. 5(c). A bright-line rule, such as the federal ten-day limit, is obviously necessary to protect the rights of individuals in such situations. If Arkansas had a similar rule, it is unlikely that Tilson would have spent fourteen months in jail. We can only hope that this case serves as the impetus for correcting what appears to be a grave deficiency in Arkansas procedures.
 
 III. CONCLUSION
 
 22
 We reluctantly must reverse the district court's denial of the Department and Goff's motion for judgment as a matter of law, and thus, we remand to the district court with instructions to enter judgment for the defendants. The cross-appeal is dismissed with prejudice.
 
 
 23
 LAY, Senior Circuit Judge, dissenting.
 
 
 24
 The City of Forrest City, Arkansas, incarcerated an innocent African-American man for fourteen months without an initial judicial determination of probable cause following a warrantless arrest, and without filing an information or any other formal charge. The case lends itself to a strong inference of racial injustice by city and county officials. Regardless of the intent, the events that occurred constitute a disgrace to the criminal justice system of any civilized society.
 
 I. BACKGROUND
 
 25
 Jessie Tilson was arrested on April 4, 1989, by two police officers who were employed by the City of Forrest City, Arkansas. He was purportedly arrested for an alleged violation of his Missouri parole. The record lends support for the jury to find in actuality that city police officials were conducting a murder investigation and they were beginning to focus on Tilson as the perpetrator.[1] Police officers testified that the National Crime Information Center (NCIC) indicated that Tilson was in violation of his parole in Missouri. Officer Dooley testified he verified Tilson's detainer by telephone with the Missouri Department of Corrections. The only documentary evidence of any such confirmation is a letter dated September 28, 1990.[2] The record shows that the questioning of Tilson and the ongoing investigation by the police officials from the date of his warrantless arrest until April 17, 1989, was related to the suspicion that Tilson had committed a murder.[3]
 
 
 26
 Tilson was not taken before any judicial officer at the time of his warrantless arrest. Pursuant to Rule 8.1 of the Arkansas Rules of Criminal Procedure, Tilson was required to have been taken before a judicial officer "without unnecessary delay" for a probable cause hearing. See Ark.R.Crim.P. 8.1. The Constitution of the United States requires no less. See County of Riverside v. McLaughlin, 500 U.S. 44, 56, 111 S.Ct. 1661, 1669-70, 114 L.Ed.2d 49 (1991); Gerstein v. Pugh, 420 U.S. 103, 124-25, 95 S.Ct. 854, 868-69, 43 L.Ed.2d 54 (1975).
 
 
 27
 On April 17, 1989, while Tilson was still being held unlawfully, the same police officers procured a warrant for Tilson's arrest on a murder charge.[4] On April 19, 1989, Tilson was bound over to circuit court. After this date, Tilson did not appear in court again until June 11, 1990, the date he was released pursuant to a writ of habeas corpus.
 
 
 28
 Tilson brought suit against the Forrest City Police Department (the "City") and police officials under 42 U.S.C. Sec. 1983 alleging violations of his constitutional rights. The jury found that Officers Dooley and Ramsey had not violated Tilson's constitutional rights, or at least had acted in good faith, but that the City and Police Chief Goff had violated Tilson's constitutional rights. The district court, the Honorable Elsijane T. Roy, an experienced trial judge, denied motions for directed verdict, judgment notwithstanding the verdict and new trial, from which the City and Chief Goff appealed.
 
 
 29
 There is no proof that Tilson, arrested without a warrant, ever received a probable cause hearing. The Supreme Court has held that the Fourth Amendment requires a probable cause hearing within forty-eight hours of a warrantless arrest, absent a bona fide emergency or other extraordinary circumstances. See County of Riverside, 500 U.S. at 57, 111 S.Ct. at 1670; see also Gerstein, 420 U.S. at 124-25, 95 S.Ct. at 868-69. Hence, the burden of proof was on the City to show some type of emergency or extraordinary circumstance that caused the delay. See County of Riverside, 500 U.S. at 57, 111 S.Ct. at 1670. The government has made no effort to carry this burden.
 
 
 30
 The Arkansas Rules of Criminal Procedure apparently do not provide any time limit by which, after arrest, a prosecutor must file an information or release a prisoner. Nor do the Arkansas Rules of Criminal Procedure provide for a preliminary hearing before a judicial officer if an information is not filed within a set time frame. See Linda A. Malone, The Availability of a First Appearance and Preliminary Hearing--Now You See Them, Now You Don't, 1983 Ark.L.Notes 41.[5] Arkansas Rule of Criminal Procedure 8.3 requires judicial officers to inform an arrestee of the charge and "if unable to dispose of the case" the judicial officer shall "determine by an informal, non-adversary hearing whether there is probable cause for detaining the arrested person." Ark.R.Crim.P. 8.3(c).
 
 
 31
 There is no proof by the state that Tilson ever received such a hearing after his initial arrest or after issuance of his arrest warrant on April 17. One reason may be that Tilson never was formally charged after his original arrest. The fact that Tilson was arrested without a warrant lays the predicate to the required Gerstein probable cause hearing.
 
 
 32
 The jury in this case found that the Chief and the City had violated Tilson's constitutional rights. The jury was entitled to find that the police department and Chief Goff showed a reckless disregard for the constitutional rights of suspects by failing to implement procedures and to ensure that they were understood and followed. See Howard v. Adkison, 887 F.2d 134, 137-38 (8th Cir.1989). In reviewing the district court's denial of the defendants' motions for directed verdict or judgment notwithstanding the verdict, this court must consider the evidence in the light most favorable to the prevailing party and give the prevailing party " 'the benefit of all favorable inferences which may reasonably be drawn from the facts proved.' " Morgan v. Arkansas Gazette, 897 F.2d 945, 948 (8th Cir.1990) (citation omitted).
 
 II. LIABILITY OF POLICE CHIEF GOFF
 
 33
 There should be little question that the liability of Chief Goff should be upheld. Proof of actual knowledge of a constitutional violation is not necessary for a supervisor to be liable; reckless disregard is sufficient. Howard v. Adkison, 887 F.2d at 138 ("This court has consistently held that reckless disregard on the part of a supervisor will suffice to impose liability."). Liability can be imposed upon Chief Goff either for his failure to train or supervise his officers, or for his personal involvement in Tilson's detention.
 
 A. Personal Involvement
 
 34
 Chief Goff could be held liable for Tilson's constitutional deprivations based on his personal involvement in the continued detention of Tilson. In Webster v. Gibson, 913 F.2d 510 (8th Cir.1990), this court found that the plaintiff had alleged personal involvement on the part of the sheriff sufficient to withstand a motion to dismiss. Webster was subject to a warrantless arrest and was detained for forty-five days without receiving a probable cause hearing. The court found that Webster stated a claim against the sheriff (even though the sheriff was not the arresting officer), because he alleged that the sheriff knew of Webster's detention and knew there was a statutory requirement that Webster be taken before a judicial officer without unnecessary delay. Id. at 514 ("Webster's allegations that the sheriff was aware of and directly involved in his detention for forty-five days without a probable cause hearing and knew that there was a statutory requirement regarding detention of an individual were sufficient to show the sheriff's knowledge of Webster's wrongful detention.").
 
 
 35
 Likewise, in Wayland v. City of Springdale, 933 F.2d 668 (8th Cir.1991), this court determined that the city, police chief and two officers could be held liable for the detention of an individual for six days following a warrantless arrest, even if they were not responsible for the delay in arraignment. Wayland, 933 F.2d at 670-71. The court found the pleadings provided sufficient allegation of the factual nexus of the unauthorized detention with the subsequent jail-suicide of the detainee.
 
 
 36
 The evidence in the present case supports a finding regarding Chief Goff's knowledge of Tilson's arrest, continued incarceration, and the police department's duty to comply with the statutory requirement that Tilson be "taken before a judicial officer without unnecessary delay" pursuant to Rule 8.1 of the Arkansas Rules of Criminal Procedure.[6] The Chief admitted he knew Tilson was arrested. It was his burden to show why Tilson was detained without being given a prompt probable cause hearing. See County of Riverside, 500 U.S. at 57, 111 S.Ct. at 1670.[7]
 
 
 37
 The trial judge properly submitted this issue to the jury. The reasonableness of the length of a detention is a fact question for the jury. See Wayland, 933 F.2d at 670-71; see also Austin v. Hamilton, 945 F.2d 1155, 1162-63 (10th Cir.1991). Courts have recognized that a Fourth Amendment violation, as defined by Gerstein and County of Riverside, can give rise to money damages pursuant to Sec. 1983. See, e.g., Willis v. City of Chicago, 999 F.2d 284, 288-90 (7th Cir.1993) (affirming finding that detention of forty-five hours without probable cause hearing violated arrestee's Fourth Amendment rights, although nominal damages award of $1 did not entitle arrestee to attorney's fees), cert. denied, --- U.S. ----, 114 S.Ct. 879, 127 L.Ed.2d 74 (1994); Hallstrom v. City of Garden City, 991 F.2d 1473, 1480-83, 1486 (9th Cir.) (finding that delay of four days between arrest and probable cause hearing violated arrestee's Fourth Amendment rights and remanding for a determination of damages against some defendants), cert. denied, --- U.S. ----, 114 S.Ct. 549, 126 L.Ed.2d 450 (1993); Llaguno v. Mingey, 763 F.2d 1560, 1568 (7th Cir.1985) (finding that detention of forty-two hours violated arrestee's Fourth Amendment rights, where officers learned early in the detention that arrestee would not be charged and the only reason for delay was that police were trying to build a case against arrestee, and reversing jury verdict in favor of defendants and directing verdict in arrestee's favor). Hence, the jury was entitled to impose liability on Chief Goff based on his personal involvement in Tilson's confinement.
 
 B. Failure to Train or Supervise
 
 38
 Chief Goff could also be held liable for his failure to train or supervise his officers. The evidence is quite explicit that Goff, as Chief of Police and thus the supervisory authority of the police, failed to supervise or train his officers concerning arrest procedures and the necessity under Arkansas law, as well of the Constitution of the United States, to ensure that a person seized by a warrantless arrest is taken before a judicial officer "without unnecessary delay" for a probable cause hearing. See Ark.R.Crim.P. 8.1. This claim is not based upon respondeat superior liability. See Monell v. Department of Social Servs. of New York, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). It is based upon a deliberate indifference to the rights of Tilson or any other arrestee. See City of Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204-05, 103 L.Ed.2d 412 (1989); Bolin v. Black, 875 F.2d 1343, 1347 (8th Cir.), cert. denied, 493 U.S. 993, 110 S.Ct. 542, 107 L.Ed.2d 539 (1989).
 
 
 39
 If there was no training or supervision in this regard, the chief of police is responsible. See Hahn v. McLey, 737 F.2d 771, 773 (8th Cir.1984) (per curiam) ("[A] supervisor may be liable for the acts of a subordinate if injury is inflicted upon the plaintiff as a result of a breach of the supervisor's duty to train, supervise, or control the actions of subordinates."). There was testimony at trial that in his eighteen years as Chief of Police, Chief Goff had never established procedures for the police department. Thus, the jury was entitled to conclude under the court's instructions that both the Chief and the police department failed to train the officers in how to handle extraditions or in how to deal with warrantless arrests to ensure that a judicial officer is advised of a detainee's presence and that a probable cause hearing is held.
 
 
 40
 Such deliberate indifference and lack of proof as to the reasons for the prolonged detention provide a jury with a basis to find liability. Such situations clearly fall within the ambit of Sec. 1983, which seeks to protect individuals such as Tilson from the deprivation of their constitutional rights. It makes a mockery of the Civil Rights Act to minimize the liability of the Chief of Police. If the Chief, who controls the policies and procedures of his department, is not responsible, then under these circumstances, nobody can be held liable and the Civil Rights Act becomes a sham for those whose innocence and liberty are trampled upon. It clearly is no answer to say the arresting officers might be liable. There is no showing by Chief Goff that the arresting officers knew of their duty to deliver Tilson to a judicial officer.[8] The City had the duty to ensure a prompt judicial determination of probable cause and this responsibility was implicitly delegated by law to the supervisor of the Police Department to see that it was carried out.
 
 
 41
 Tilson's Fourth Amendment rights as explicated in Gerstein have been violated. This fact is indisputable. The question posed is who shall be responsible for the violation. Chief Goff cannot hide behind the dereliction of his officers if the officers were never trained or taught of their constitutional legal duty. Cf. Murray v. City of Chicago, 634 F.2d 365, 366 (7th Cir.1980) ("The defendants should not be permitted to 'get off the hook' by merely pointing the finger at each other. Someone is surely at fault for failing to establish or execute appropriate procedures for preventing such serious malfunctionings in the administration of justice."), cert. dismissed, 456 U.S. 604, 102 S.Ct. 2226, 72 L.Ed.2d 366 (1982). This is a travesty of justice for which the City of Forrest City, represented by the Police Department, has a responsibility. The jail where Tilson was detained was not owned and run by police officers, but rather it was part and parcel of the governmental structure of the City of Forrest City. It is clear that the City was responsible for Tilson's detention. The question we face is whether there was legal responsibility under Sec. 1983. In my view, Chief Goff may be held liable; so, too, may the City.
 
 III. LIABILITY OF THE CITY OF FORREST CITY
 
 42
 A municipality that operates under a policy or custom that unconstitutionally deprives a citizen of his or her rights may be liable under Sec. 1983. Monell v. Department of Social Servs. of New York, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). This is true even if the arresting officers are not held responsible because of some good faith belief, meriting qualified immunity.[9] A municipality may not assert qualified immunity as a defense. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, --- U.S. ----, ----, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993).
 
 
 43
 In Gerstein, states were given the responsibility of instituting procedures to assure prompt hearings for those arrested without warrant. In the present case, the City failed to adopt any such procedures, and this failure resulted in the deprivation of Tilson's Fourth Amendment rights. A jury could reasonably find that the City demonstrated "deliberate indifference" to the rights of those who entered the criminal justice system in Forrest City and that the City should thus be held liable. See Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir.1992) ("a local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights"); Fiacco v. City of Rensselaer, 783 F.2d 319, 327 (2d Cir.1986) ("[a municipality] should not take a laissez-faire attitude toward the violation by its peace officers of the very rights they are supposed to prevent others from violating"), cert. denied, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987); see also City of Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989) (adopting "deliberate indifference" standard for Sec. 1983 failure-to-train claims). Moreover, a jury could find the City liable based upon the inaction of Chief Goff. Municipal officials who have final policymaking authority may subject not only themselves, but also the government, to liability under Sec. 1983. Angarita v. St. Louis County, 981 F.2d 1537, 1546-47 (8th Cir.1992).
 
 
 44
 There existed sufficient evidence to support Tilson's claim against the City of Forrest City. Without recounting the undisputed facts above, it is clear that it was the prolonged inaction of the City, through its policymaker, Chief Goff, that allowed Tilson's illegal detention to occur. Cf. Bordanaro v. McLeod, 871 F.2d 1151, 1162 (1st Cir.) (holding that "[t]he 'do nothing policy' of the Mayor and the Chief [of Police] exposed the citizens ... to imminent police misconduct, and was attributable to the municipality"), cert. denied, 493 U.S. 820, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989). Neither the Chief nor anyone else in the City ever promulgated any policy to enforce Rule 8.1 of the Arkansas Rules of Criminal Procedure, which codifies the constitutional requirement that an arresting officer take an arrestee before a judicial officer for a determination of probable cause as a condition of continued confinement. Indeed, in their appellate brief defendants admit that "[t]here are no written procedures in a criminal case." Appellant's Br. at 8. The record fully supports the conclusion that Tilson's illegal detention was the direct result.
 
 
 45
 In light of the strong evidence that Tilson was arrested as a murder suspect, and not a parole violator, it should be manifest that a County of Riverside/ Gerstein violation existed. An officer's reading an NCIC detainer alone does not constitute a judicial finding of probable cause. A fundamental concern of Gerstein, when a warrantless arrest occurs, is the fact that:
 
 
 46
 the suspect's need for a neutral determination of probable cause increases significantly.... Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships.... When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty.
 
 
 47
 420 U.S. at 114, 95 S.Ct. at 863 (citations omitted). To illustrate the relevance of these concerns, I note that while Tilson was incarcerated, his wife left him and he lost his job.
 
 IV. DAMAGES
 
 48
 The more difficult question is whether the Chief's and the City's failure to formulate detention policies was a "moving force," see Monell, 436 U.S. at 694, 98 S.Ct. at 2038, behind Tilson's incarceration from April 17, 1989 to his release in June of 1990--the period after an arrest warrant was served on Tilson for murder. It is tempting to conclude that the Chief's and the City's liability should be cut off when the arrest warrant was issued, because after that point, Tilson became the responsibility of the sheriff and the state prosecutor. Indeed, it is plausible to argue that after the warrant was issued, the continued detention of Tilson could not have been remedied by any further action of Chief Goff or the City.[10] Even if these observations are correct, however, and liability might terminate upon the issuing of the arrest warrant, Tilson would at the very minimum be entitled to a new trial focusing solely upon his initial two-week detention in violation of his Fourth Amendment rights.
 
 
 49
 More to the point, though, it should be concluded that this result would be incorrect. Under the existing evidence, the verdict and judgment should be affirmed. If the City's failure to promulgate a policy on detention procedures was "closely related to" Tilson's unlawful continued incarceration, regardless of whether others were at fault,[11] then the verdict should stand. See City of Canton, 489 U.S. at 391, 109 S.Ct. at 1206. I think it analytically suspect to view Tilson's incarceration as two separate incidents. Tilson remained in the same jail for fourteen months. He was originally placed there and unlawfully detained without a probable cause hearing in accordance with the policies of inaction of Chief Goff and the City. There exists a strong inference, supported by testimony of the arresting officers themselves, that Tilson's unlawful detention was unrelated to any parole violation but was, from the start, directly related to the police investigation of the murder for which Tilson was a suspect. The jury reasonably could have believed that the parole violation was a mere subterfuge for Tilson's warrantless arrest and detention. Thus, the initial detention without a probable cause hearing had a direct nexus to his arrest for the murder charge and his continued detention. This detention was a continuing violation of Tilson's Fourth Amendment rights. See Albright v. Oliver, --- U.S. ----, ---- - ----, 114 S.Ct. 807, 815-16, 127 L.Ed.2d 114 (1994) (Ginsburg, J., concurring) (discussing seizure under Fourth Amendment).
 
 
 50
 The Civil Rights Act does not replace the law of joint tortfeasors. See Malley v. Briggs, 475 U.S. 335, 345 n. 7, 106 S.Ct. 1092, 1098 n. 7, 89 L.Ed.2d 271 (1986) ("Sec. 1983 'should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.' ") (citation omitted). The mere fact that others, be they the sheriff, the prosecutor, or Tilson's own lawyer, may have contributed to Tilson's unlawful detention does not relieve other tortfeasors who substantially contributed to that detention. Had the requirements of Gerstein initially been met, Tilson would have been taken before a neutral judicial officer within 48 hours of his arrest. At that time, it may have been difficult for the State to establish that Tilson was still wanted by the State of Missouri, or more importantly, to show probable cause for his detention on the murder charge. Although the testimony of the officers is contradictory, it appears that the application for an arrest warrant filed by Sgt. Dooley on April 17 includes statements made by Tilson and by other witnesses obtained more than 48 hours after his initial incarceration. I therefore find that there is more than sufficient evidence to support the judgment.
 
 
 51
 The jury's award of punitive damages against the City and the Chief indicates that the jury was convinced that "the act or omission of one or more defendants which proximately caused the actual injury or damage to the plaintiff, was maliciously, or wantonly, or oppressively done...." Trial Tr. at 333.[12] In such a situation, the jury was justified in imposing liability on the City and the Chief. See Owen v. City of Independence, 445 U.S. 622, 654, 100 S.Ct. 1398, 1417, 63 L.Ed.2d 673 (1980) ("It hardly seems unjust to require a municipal defendant which has violated a citizen's constitutional rights to compensate him for the injury suffered thereby. Indeed, Congress enacted Sec. 1983 precisely to provide a remedy for such abuses of official power"). The complete lack of procedural safeguards allowed Tilson's illegal detention to go unchecked. I would affirm.
 
 
 
 [1]
 This motion previously was termed a "motion for judgment notwithstanding the verdict." Fed.R.Civ.P. 50(a), advisory committee's note
 
 
 [2]
 The dissent states Tilson's April 4 arrest was made without a warrant. The factual scenarios surrounding Tilson's arrests appear much clearer to the dissent than to the majority. Although our holding does not rely upon a determination of the legality of Tilson's arrest, in Arkansas a parole violator may be arrested without a warrant. See Ark.Code Ann. Sec. 16-93-705(a)(4) (Michie 1987) ("Any parole officer may arrest a parolee without a warrant or may deputize any officer with power of arrest to do so by giving him a written statement setting forth that the parolee, in the judgment of the parole officer, violated conditions of parole."); see also Cole v. Nebraska State Bd. of Parole, 997 F.2d 442, 444 (8th Cir.1993) (arrest by state actor of parole violator must be authorized by state law)
 
 
 [3]
 The officers ran Tilson's name through the National Crime Information Center (NCIC) and in return received a teletype message that Tilson was wanted on an absconder warrant as a parole violator. See Dist.Ct.Ex.List (Teletype message dated April 4, 1989). The message received through NCIC gives the wanted person's physical description and any identifying scars or tatoos. Tr. Vol. II, at 276. Dooley testified that on April 5, 1989, he contacted by telephone Robert K. Newsom, a Missouri parole officer, to confirm the teletype message. Id. at 278. Dooley also testified that after he obtained sufficient evidence to arrest Tilson for murder, he contacted the Missouri authorities to inform them that Tilson could not be extradited at that time. Id. at 279
 
 
 [4]
 Tilson appeared before a judicial officer when he was bound over to the circuit court. He may have, at least he should have, received an informal, non-adversarial determination of probable cause at that time. In Arkansas an initial appearance, pursuant to Arkansas Rule of Criminal Procedure 8.3, requires a judicial officer to inform the defendant of the charge and, "if unable to dispose of the case," Ark.R.Crim.P. 8.3(c), the judicial officer shall "determine in a non-adversarial hearing whether there is probable cause for detaining the arrested person." Id. We are unwilling to assume without further evidence--nor is it necessary to our holding--that because Tilson appeared before the judge and was advised of the penalties, Appellant's Br. at 25, he also received a probable cause hearing
 
 
 [5]
 Tilson had an attorney appointed for him on April 19, 1989. His attorney and the prosecutor made a joint motion for a psychiatric evaluation that was granted on May 4, 1989. The evaluation was not completed until December 4, 1989. The prosecutor testified that during this interval, under Arkansas law, he was prohibited from prosecuting Tilson
 
 
 [6]
 This claim relates to both arrests: the parole-violation arrest on April 4 and the murder arrest on April 17
 
 
 [7]
 The interrogatory given to the jury was as follows:
 INTERROGATORY # 2 INDICATE WHICH OF THE NAMED DEFENDANTS YOU HAVE FOUND TO HAVE VIOLATED THE PLAINTIFF'S CONSTITUTIONALLY PROTECTED RIGHTS. (Answer "YES" or "NO" as to each defendant.)
 FORREST CITY POLICE DEPARTMENT YES
CHIEF JOE GOFF YES
SGT. BILL DOOLEY NO
OFFICER DUEY [sic] RAMSEY NO
 Appellant's Br. at 26.
 
 
 [8]
 Tilson cross-appealed, but he failed to identify in his brief the issues he raises on cross-appeal. In his notice of cross-appeal, Tilson asserts that the jury erroneously acquitted Dooley and Ramsey and requests an enhanced damage award. These issues were not briefed and thus are waived on appeal. See United States v. Simmons, 964 F.2d 763, 777 (8th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 632, 121 L.Ed.2d 563 (1992)
 
 
 [9]
 The dissent cites Webster to support its proposition that Goff's knowledge of Tilson's detention is sufficient evidence to support this jury verdict. See post, at 811. We disagree. We agree that Webster stands for the proposition that allegations of direct involvement on the part of a supervisor are sufficient to state a claim under Sec. 1983. 913 F.2d at 514. Webster reversed a district court's 28 U.S.C. Sec. 1915 dismissal of a pro se complaint because it was neither "baseless" nor did it fail to state any "rational argument in law or fact." Id. The Webster court did not extend the law so as to allow Sec. 1983 relief for a plaintiff without any proof of causation. We note that the complaint at issue in Webster alleged that the "Sheriff of Ashley County on 9-30-88 detained me [the plaintiff] without a warrant." Id. (emphasis added); see also Wayland v. City of Springdale, 933 F.2d 668, 670 (8th Cir.1991) ("The Springdale police held Wayland based only on the suspicion he was involved in the local theft.") (emphasis added). Unlike the cases cited by the dissent in support for its position, Tilson was not held by the Department or Goff; rather, Tilson was held in the St. Francis County jail. See supra at 805 ("The suit originally included the St. Francis County Sheriff's Department and the St. Francis County Sheriff; however, these parties were dismissed pursuant to a grant of summary judgment.")
 
 
 [10]
 The jury instruction regarding Goff's liability reads as follows:
 PLAINTIFF MAKES A CLAIM NOT ONLY AGAINST THE POLICE OFFICERS INVOLVED IN THE INCIDENT, BUT ALSO AGAINST THE CHIEF OF POLICE, JOE GOFF. IN ORDER FOR THE DEFENDANT CHIEF OF POLICE TO BE LIABLE TO THE PLAINTIFF, THE PLAINTIFF MUST SHOW THAT THIS OFFICIAL EITHER ENCOURAGED THE SPECIFIC INCIDENT OF MISCONDUCT OR IN SOME OTHER WAY DIRECTLY PARTICIPATED IN IT. AT A MINIMUM, PLAINTIFF MUST SHOW THAT THE DEFENDANT OFFICIAL AT LEAST OFFICIALLY AUTHORIZED, APPROVED, OR KNOWINGLY ACQUIESCED IN THE UNCONSTITUTIONAL CONDUCT OF THE OFFENDING OFFICERS. PERSONAL PARTICIPATION IN THE IMMEDIATE ACT WHICH VIOLATED THE PLAINTIFF'S RIGHTS IS NOT REQUIRED. IT IS SUFFICIENT IF THE SUPERIOR OFFICER SETS IN MOTION A SERIES OF ACTS BY OTHERS, OR KNOWINGLY REFUSES TO TERMINATE A SERIES OF ACTS BY OTHERS, WHICH HE KNOWS OR REASONABLY SHOULD KNOW WOULD CAUSE OTHERS TO INFLICT THE CONSTITUTIONAL INJURY.
 Appellee's Br. at 30. Although the court's instruction does not clearly articulate a failure-to-train-or-supervise claim, the language "knowingly refuses to terminate a series of acts by others" can be construed to state a failure-to-train claim. Because a failure-to-supervise claim must show tacit approval or authorization for the subordinate's action, the statement in the instruction regarding knowing acquiescence or authorization in unconstitutional conduct can be construed to state a failure-to-supervise claim.
 
 
 [11]
 We note that the dissent has reshaped Tilson's claim. The dissent states that "Chief Goff ... never established procedures for the police department," post, at 812. Tilson established that there were no written procedures
 
 
 [12]
 Tilson made this allegation in his complaint; however, because the jury was not instructed on this alleged violation, we do not consider it here
 
 
 [13]
 By finding Dooley and Ramsey to be not liable, it is likely that the jury found that they had probable cause for the arrests. It is also possible that the jury found that Dooley and Ramsey were not liable because, although they lacked probable cause, they also lacked the requisite state of mind. See, e.g., Malley v. Briggs, 475 U.S. 335, 344-45, 106 S.Ct. 1092, 1097-98, 89 L.Ed.2d 271 (1986) (police officers retain qualified immunity for an unlawful arrest unless "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable"). In the instant case, we note the jury received a good-faith defense instruction
 
 
 [14]
 We disagree with the dissent's statement that "Tilson's Fourth Amendment rights as explicated in Gerstein have been violated." Post, at 813. We agree that there is no evidence indicating that Tilson received a probable cause hearing after his initial arrest, and we agree that Tilson, at a minimum, had a due process right to an informal preliminary hearing at the time of his arrest. Parole " '[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions.' " Gagnon v. Scarpelli, 411 U.S. 778, 781, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973) (quoting Morrissey v. Brewer, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). See also Morrissey, 408 U.S. at 485, 92 S.Ct. at 2602 (explaining that a parole violator should receive an informal preliminary hearing where the arrest occurs); accord Gerstein v. Pugh, 420 U.S. 103, 121 n. 22, 95 S.Ct. 854, 867 n. 22, 43 L.Ed.2d 54 (1975)
 
 
 [15]
 The dissent states that the jail was "part and parcel of the government structure of the City of Forrest City." Post, at 813. We disagree based upon the record indicating that Tilson was incarcerated in the St. Francis County jail
 
 
 [16]
 The dissent ignores the basis for our holding: Tilson failed to offer the jury any evidence that the Department or Goff caused his deprivation of liberty for 14 months. Section 1983 cannot be premised on vicarious liability. Monell, 436 U.S. at 692, 98 S.Ct. at 2036-37. As disturbed as we are by the deprivations borne by Tilson, our inquiry under Sec. 1983 does not end with a finding that a plaintiff has suffered a constitutional deprivation. The claimant must go further and prove that the defendant caused that deprivation. A court cannot remedy a deprivation unless the plaintiff proves his or her case and sues the correct defendants
 
 
 [17]
 Unfortunately, Tilson's statute of limitations appears to have run, see Ketchum v. City of West Memphis, 974 F.2d 81, 82 (8th Cir.1992) (Arkansas's general personal-injury statute of limitations period of three years applies to Sec. 1983 claims), thus depriving him of the opportunity to bring a claim against the prosecutor. But see Lewellen v. Raff, 843 F.2d 1103, 1114 (8th Cir.1988) (finding that prosecutors were absolutely immune from liability for their actions when reviewing evidence and deciding whether to initiate a prosecution), cert. denied, 489 U.S. 1033, 109 S.Ct. 1171, 103 L.Ed.2d 229 (1989)
 
 
 [1]
 For example, at trial Officer Ramsey testified that he and Officer Dooley "were investigating a [murder] suspect, ran the suspect through NCIC on our police computer. Suspect's name came back as being a wanted person out of Missouri." Trial Tr. at 214
 
 
 [2]
 The Missouri Parole Board had discharged Tilson from parole on August 2, 1989, more than one year before the date of the verification letter
 
 
 [3]
 Thus, a reasonable jury could find that Tilson's arrest was a pretext to submit Tilson to a custodial interrogation regarding the murder. Delay in taking an arrestee before a magistrate in order to collect further evidence is not an acceptable justification for delaying a probable cause hearing. See County of Riverside v. McLaughlin, 500 U.S. 44, 56, 111 S.Ct. 1661, 1669-70, 114 L.Ed.2d 49 (1991)
 
 
 [4]
 This fact seems to further corroborate that the original arrest and two week detention, without a probable cause hearing, was directly related to the unsubstantiated murder charge
 
 
 [5]
 The absence of a required preliminary hearing stands in stark contrast to the Federal Rules of Criminal Procedure. Under Rule 5(c) of the Federal Rules of Criminal Procedure, a person charged with an offense to be tried by a district court judge is entitled to a preliminary examination within ten days of the initial appearance if the person is in custody. See Fed.R.Crim.P. 5(c). The preliminary examination is not held if an indictment against the defendant is filed before the examination date. If Arkansas had a rule analogous to Rule 5(c), Tilson may well have been released from jail by April 29, 1989: he was bound over on April 19, hence a preliminary examination would have been scheduled for no later than April 29. Instead of waiting until June 10, 1990, to determine that there was no reason to hold Tilson, a judicial officer could have ascertained such facts by April 29, 1989, and Tilson would have been released. I request that a copy of this opinion be sent to the Attorney General of the State of Arkansas. In the event that Arkansas procedures are deficient, as they appear to be, legislative action may be needed to obviate the recurrence of detaining any individual without a prompt judicial determination of probable cause. Legislative action may also be necessary to prevent an arrestee from languishing in jail for such an extended period of time when the prosecutor has no intention of bringing charges
 
 
 [6]
 By his own admission, "Chief Goff knew that the plaintiff was in jail but, did not do anything to determine why he was in jail." Appellants' Br. at 7. The City of Forrest City, Arkansas, has 13,364 occupants. 1990 Census of Population and Housing, Population and Housing Unit Counts: Arkansas, 1990 CPH-2-5, Table 9, p. 46. It is a reasonable inference that the Chief of Police in a small community would be aware of who was arrested, why he or she was arrested, and the status of each defendant. The Chief, as supervisor in charge of the police department, is more than just a figurehead. It is a reasonable inference for a jury to decide that the Chief knew of Tilson's status and the fact that he had not been charged or taken before a judicial officer. Cf. Coleman v. Frantz, 754 F.2d 719 (7th Cir.1985) (two members of panel stating that a sheriff has a duty to release a detainee if the detainee is not brought before a magistrate judge within a reasonable amount of time)
 
 
 [7]
 In County of Riverside, the Supreme Court stated:
 Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes. In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance.
 500 U.S. at 57, 111 S.Ct. at 1670.
 
 
 [8]
 Additionally, it was erroneous for the jury to be instructed on qualified immunity with respect to the arresting officers. It is clearly established that qualified immunity is a question of law and should be decided by the court. See Angarita v. St. Louis County, 981 F.2d 1537, 1548 n. 18 (8th Cir.1992). That issue is not before us, however, because Tilson's counsel failed to object to the instruction or raise the issue on appeal
 
 
 [9]
 Of course, if a jury found that petitioner had not been caused any constitutional injury by the individual officers, then the City could not be liable for any injury notwithstanding a policy that might in itself be illegal. See Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986). However, here no such finding was made. The jury was told the individual officers could be exonerated if they acted in good faith. No such instruction was given in Heller
 
 
 [10]
 Moreover, one could argue that no constitutional violation even occurred after Tilson's bindover order. It would appear, if one views the unlawful detention of Tilson as two separate incidents, that Gerstein would no longer serve as the predicate for Tilson's cause of action because his second arrest and detention was judicially approved by the issuance of an arrest warrant based on probable cause. See Baker v. McCollan, 443 U.S. 137, 144, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979) (finding no constitutional violation where detainee "was indeed deprived of his liberty for a period of days, but it was pursuant to a warrant conforming ... to the requirements of the Fourth Amendment"); see also Albright v. Oliver, --- U.S. ----, ----, 114 S.Ct. 807, 814, 127 L.Ed.2d 114 (1994) (Scalia, J., concurring) ("I think it unlikely that the procedures constitutionally 'due,' with regard to an arrest, consist of anything more than what the Fourth Amendment specifies"). One might reason, however, that Tilson's procedural due process rights were violated since he was not given a probable cause hearing, an arraignment or a preliminary hearing. See Baker, 443 U.S. at 145, 99 S.Ct. at 2695 (indicating that, "depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty ... without due process of law' "); Coleman v. Frantz, 754 F.2d 719 (7th Cir.1985) (holding an eighteen day detention before first appearance violated due process); see also Garcia v. City of Chicago, 24 F.3d 966, 971-76 (7th Cir.1994) (Cudahy, J., concurring in part and dissenting in part) (discussing due process violation where authorities know they have no basis for detention following lawful arrest); Patton v. Przybylski, 822 F.2d 697, 700-01 (7th Cir.1987) (Posner, J.) (indicating that allowing a person to "languish in jail" over "his vigorous protest that he is the wrong man ... and keep[ing] him in jail for this period without either investigating the case or bringing him before a magistrate raises serious constitutional questions ... under the due process clause"). But these theories cannot be urged against the City and the Chief because they did not cause the denial of due process
 
 
 [11]
 Others were at fault; clearly the prosecution, in failing to bring a charge or file any information during Tilson's continued incarceration, was a factor. Tilson's lawyer sat on his thumbs in failing to seek a petition for habeas corpus requiring Tilson's release
 
 
 [12]
 In the jury instructions, the court further explained:
 An act or failure to act is maliciously done if prompted or accompanied by ill will or spite or grudge, either toward the injured person individually, or toward all persons in one or more groups or categories of which the injured person is a member. An act or failure to act is wantonly done if done in a reckless or callous disregard of, or indifference to the rights of one or more persons including the injured person.
 An act or failure to act is oppressively done if done in a way or manner which injures or damages or otherwise violates the rights of another person [with] unnecessary harshness or severity, as by misuse or abuse of authority or power, or by taking advantage of some weakness or disability or misfortune of another.
 Trial Tr. at 333-34.