Randy Reed MOOREMAN, Appellant,

v.

Willis H. SARGENT; John Doe I, Intake Officer, Cummins Unit, 15 Barracks, December 1987; John Doe II, Security Guard, Cummins Unit, 15 Barracks, December 1987; K. Starks; M. Knight; M. Davis; James Banks; K. Kirtley; and R. Murray, Appellees.

No. 92–2279.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1993.

Decided April 16, 1993.

---

Mark L. Ross, Little Rock, AR, argued, for appellant.

David B. Eberhard, Asst. U.S. Atty., Little Rock, AR, argued, for appellees.

Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON and REAVLEY,[*] Senior Circuit Judges.

RICHARD S. ARNOLD, Chief Judge.

Randy Reed Mooreman, an inmate of the Arkansas Department of Correction, appeals the District Court's [1] order dismissing his complaint under 42 U.S.C. § 1983, which claimed that the defendants, the Warden and several security officers of the Cummins Unit, violated his right to be free from cruel and unusual punishment by acting with reckless disregard for his safety from attack by other inmates. We affirm.

Mooreman entered prison in December of 1987 after pleading guilty to raping and kidnapping an eighteen-year-old male. When Mooreman arrived at the Cummins Unit, a classification officer asked him if he wanted protective custody and if he had any friends or enemies in the Cummins Unit. Mooreman said no, and was then assigned to Barracks 15, which is comprised of fifteen two-bunk cells on three

tiers. A control booth is located in the front of the barracks on the ground floor, and is manned with a security officer twenty-four hours a day. There is also an observation booth on the left-hand side of the barracks above ground level, where officers periodically observe the inmates.

At a hearing before the magistrate judge, Mooreman testified that on December 20, 1987, between 6:00 and 9:00 p.m., two inmates, Lewis and Ford, came into his cell and said they wanted to talk to him. Lewis whispered to Ford, who left the cell, came back a minute later, shut the cell door, and handed something to Lewis. Lewis then pulled a kitchen knife on Mooreman while Ford and another inmate, Rudd, blocked the cell from the outside. Lewis told Mooreman that he and the other inmates were going to "right the situation" by punishing him for his crime and told Mooreman to remove his clothes. Lewis then unscrewed the lightbulb, causing the cell to be dark, and pulled the blanket from the top bed over the end of the bunks so that no one could see the bottom bunk. (The back of the cell was not visible from either the control booth or the observation booth.) Lewis then raped Mooreman on the bottom bunk. A few minutes later, Ford and Rudd also raped him. Mooreman testified that the sequence of events took about twelve minutes.

Mooreman testified further that one or two of the three inmates raped him on each of the following three nights. The inmates told Mooreman that he was Lewis's property and that one of the three would be with him at all times. His fear of the inmates kept Mooreman from telling anyone about the attacks.

On December 24 at about 6:30 a.m., a guard came to Mooreman's cell and escorted him to Captain Adell's office. Apparently, Mooreman's cellmate told the guard on duty that Mooreman was being harassed. When Captain Adell told Moore-

[*] The Hon. Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

[1.] The Hon. George Howard, Jr., United States District Judge for the Eastern and Western Districts of Arkansas, adopting the recommendation of the Hon. John F. Forster, Jr., United States Magistrate Judge for the Eastern District of Arkansas.

man that he knew what had happened, Mooreman initially denied it, but then explained everything. The guards immediately took Mooreman first to the protective-custody barracks and then to the infirmary for an examination. Mooreman has had no problems since that day.

Neither the defendants nor the District Court questioned that Mooreman was raped. The question was whether the defendants acted with reckless disregard of his right to be free from sexual attacks. The District Court found that the defendants were not aware of any danger posed by placing Mooreman in Barracks 15. The Court also determined that although the guards may have been negligent in failing to patrol the barracks carefully enough to see the attacks, the evidence failed to prove that the defendants acted with reckless disregard. Moreover, they took immediate action to protect Mooreman when they found out what had happened. The Court dismissed the case.

 Mooreman argues that the Eighth Amendment requires the prison to do more to protect inmates from sexual attacks than the Cummins Unit does. Although what happened to Mooreman was horrible and is certainly not to be tolerated by the prison, Mooreman has failed to show that the guards' conduct violated the Eighth Amendment. To prevail on his claim, Mooreman must prove that the defendants "were deliberately indifferent to his constitutional rights, either because they actually intended to deprive him of some right [which Mooreman is not arguing], or because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates." *Branchcomb v. Brewer*, 669 F.2d 1297, 1298 (8th Cir.1982). One way to establish "reckless disregard" is to show that there was a "pervasive risk of harm." *Andrews v. Siegel*, 929 F.2d 1326, 1330 (8th Cir.1991). In *Andrews* we stated that this does not mean proving a single incident or isolated incidents, but showing that "sexual assaults occur ... with sufficient frequency that prisoners ... are put in reasonable fear for their safety," and that the prison officials have been apprised

of the problem and the need for protective measures. *Andrews*, 929 F.2d at 1330 (citing *Martin v. White*, 742 F.2d 469, 474 (8th Cir.1984)).

Mooreman presented no evidence that what happened to him occurs with any frequency, and we do not believe that the Constitution requires a prison to station a full-time guard outside each cell to prevent it from ever occurring. Moreover, as soon as Mooreman told the prison officials of the problem, they placed him in protective custody. Having been told by Mooreman during classification that he had no reason to need protection and not having been informed when Mooreman was first approached by his attackers, the prison officials acted reasonably under the circumstances. In any event, we cannot say the defendants acted with reckless disregard of Mooreman's right to be free from sexual attacks by other inmates.

We affirm the judgment of the District Court.