———————————————

Nos. 95-1105NE, 95-1115NE

———————————————

Jerry Jensen, on behalf of          *
himself and all others              *
similarly situated; Reginald        *
Pierce; Richard Duff; Al            *
Wilson; Harold Crisp; Laddie        *
Dittrich; Gus Dawson; Victor        *
Carter; George Carter; Michael      *
Kane; Ernest L. Sims; Mohamed       *
Abdul Hafiz El-Tabech; and          *
and Victor Luna,                    *
                                    *
                                    *  On Appeal from the United
    Appellees/Cross-Appellants,     *  States District Court
                                    *  for the District of
        v.                          *  Nebraska.
                                    *
                                    *
Harold W. Clarke, individually      *
and in his official capacity        *
as Director of the Nebraska         *
Department of Correctional          *
Services; and Frank X. Hopkins,     *
individually and in his             *
official capacity as Warden of      *
the Nebraska State                  *
Penitentiary,                       *
                                    *
    Appellants/Cross-Appellees.     *

———————————

          Submitted:  October 16, 1995

             Filed:  January 11, 1996
          ———————————

Before RICHARD S. ARNOLD, Chief Judge, BRIGHT and WOLLMAN, Circuit
      Judges.
          ———————————

RICHARD S. ARNOLD, Chief Judge.

This case began in 1987 when the plaintiff class, inmates in the Nebraska State Penitentiary (NSP), filed suit challenging their conditions of confinement. They assert that the practice of double celling, placing two inmates in a cell designed for one, under conditions as they existed prior to this case in the NSP, violated the Eighth Amendment to the United States Constitution. These proceedings have included a hearing on liability, a premature appeal to this Court, hearings and an order on a remedial plan, and an order on attorneys' fees. Unfortunately, we must remand the case for further consideration in light of Farmer v. Brennan, 114 S. Ct. 1970 (1994).

I.

The plaintiffs are the class of inmates housed or to be housed in the four main housing units of the Nebraska State Penitentiary. They brought this case under 42 U.S.C. § 1983 (1988) to challenge the conditions of their confinement in two respects. First, they contended that the practice of double celling at the NSP violated the Eighth Amendment. Second, they contended that the policy of holding both inmates responsible for contraband found in a double cell violated the Due Process Clause of the Fourteenth Amendment. An 18-day evidentiary hearing was held before a magistrate judge regarding the validity of the plaintiffs' claims. The District Court, adopting the report and recommendations of the magistrate judge, rejected the due-process claim, but held that, while the practice of double celling inmates did not in itself violate the Constitution, the manner in which the defendants were conducting that practice did. Jensen v. Gunter, 807 F. Supp. 1463 (D. Neb. 1992).

The NSP, opened in 1981, is a maximum security prison, housing the State's most violent offenders. At the time this case was

tried, it consisted of six housing units. Units one through four,[1] the main housing units, are at issue in this case. The statistics and testimony introduced during the 18-day bench trial in this case portrayed the NSP as a violent place. Moreover, testimony from inmates persuaded the District Court that the violence had carried over to the double cells. Several conditions enhanced the level of tension in the double cells, including noise, exposure to smoke and offensive odors due to poor ventilation, lack of privacy, and the contraband rule, under which both cellmates can be punished when contraband is found in a cell.

That double celling and overcrowding at the NSP are involved has the potential of overshadowing the real issues. The District Court did not hold that either double celling or overcrowding at the NSP in themselves violated the plaintiffs' Eighth Amendment rights. In fact, it specifically rejected those claims. Rather, the District Court found that the inmates in the double cells in the four main housing units faced a substantial risk of harm in the form of violence at the hands of their cellmates. The defendants, moreover, had been deliberately indifferent to that risk. That indifference was exemplified by the policy of randomly assigning incoming inmates to double cells without considering whether the cellmates would be compatible. Stated differently, we read the District Court's order as holding that, while the practice of double celling in the NSP is not itself unconstitutional, the manner in which that practice was being carried out prior to this lawsuit violated the Eighth Amendment by exposing some prisoners to a risk of violence that was avoidable. Therefore, the issues in this case are whether the plaintiffs were exposed to a substantial risk of physical harm in the form of assaults by cellmates, and, if so, whether the defendants were deliberately indifferent to that risk. We do not reach the first issue, because we must remand this

---

[1]A fifth main housing unit was constructed during the pendency of this case.

-3-

case for further findings on the second.

This case was not final and appealable following the District Court's liability determination, a point that was made clear when the defendants attempted to take an appeal directly to this Court. See El-Tabech v. Gunter, 992 F.2d 183 (8th Cir. 1993). The defendants were ordered to propose a remedial plan. Some time passed before that plan was proposed and the defendants were ordered to adopt it.[2] Then in yet another order, the District Court awarded fees to the plaintiffs' attorneys. See El-Tabech v. Gunter, 869 F. Supp. 1446 (D. Neb. 1994). More than two years passed between the time that the District Court found that the defendants were liable and the District Court's final order. During that time, the Supreme Court decided a case, Farmer v. Brennan, that directly impacts the liability determination.

II.

The Eighth Amendment to the United States Constitution proscribes the infliction of "cruel and unusual punishments." The Supreme Court counsels that this amendment imposes upon prison officials the duty to "provide humane conditions of confinement." Farmer v. Brennan, 114 S. Ct. 1970, 1976 (1994). That duty, among other things, requires those officials to take reasonable measures to "`protect prisoners from violence at the hands of other prisoners.'" Ibid. (quoting Cortez-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir.), cert. denied, 488 U.S. 823 (1988)). The Eighth Amendment imposes this duty because being subjected to violent assaults is not "part of the penalty that criminal offenders pay for their offenses." See Rhodes v. Chapman, 452 U.S.

_____

[2]Briefly put, the remedy in this case was to order the defendants to adopt a plan that put an end to randomly assigning incoming inmates to double cells without considering whether the new cellmates would be compatible. That injunction is still in force.

-4-

337, 347 (1981).

In order to prevail on an Eighth Amendment failure-to-protect claim, inmates must make two showings. First, they must demonstrate that they are "incarcerated under conditions posing a substantial risk of serious harm." Farmer, 114 S. Ct. at 1977. The second requirement concerns the state of mind of the prison official who is being sued. It mandates that the plaintiffs show that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 1979. This subjective requirement is necessary because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotation marks, emphasis, and citations omitted).

Before Farmer, this Court analyzed failure-to-protect cases in a somewhat different manner. Under our prior cases, deliberate indifference, or reckless disregard, of a risk to inmate safety required proof of a pervasive risk of harm to inmates and a failure to respond reasonably to that risk on the part of prison officials. Porm v. White, 762 F.2d 635, 637 (8th Cir. 1985); Martin v. White, 742 F.2d 469, 474 (8th Cir. 1984). A "pervasive risk of harm," in turn, was said to exist when "violence and sexual assaults occur . . . with sufficient frequency that . . . prisoners . . . are put in reasonable fear for their safety and to reasonably apprise prison officials of the existence of the problem and the need for protective measures." Martin, 742 F.2d at 474 (quoting Withers v. Levine, 615 F.2d 158, 161 (4th Cir.), cert. denied, 449 U.S. 849 (1980)).

This approach allowed inmates to prevail upon a lesser showing than that mandated by Farmer. All that a plaintiff needed to prove was that prison officials, given the sufficient frequency of

assaults, "knew or should have known" of a substantial risk to inmate safety. Randle v. Parker, 48 F.3d 301, 304 (8th Cir. 1995). This standard was applicable when the District Court made its liability determination in this case in 1992. We read the District Court's opinion as applying this standard. This approach, however, does not comply with the subjective-state-of-mind component of deliberate indifference described in Farmer. We must, as a result, remand this case to the District Court for application of the Farmer standard for establishing deliberate indifference.

It is true, as the plaintiffs point out in their briefs, that some language in the District Court's order appears to apply something akin to the Farmer standard. When addressing reckless disregard, the Court wrote that "an inmate must show that prison officials were aware of a pervasive risk of harm to an inmate and failed to reasonably respond to that risk." Jensen, 807 F. Supp. at 1481. That statement, however, loses its force when placed in the context of the rest of the opinion.

Later in its order the District Court moved away from the standard it initially seemed to apply, writing that the risk of harm faced by the plaintiffs was "of such magnitude as to put defendants on notice of its existence." Id. at 1483. Likewise, in a subsequent order addressing the nature of the remedy to be imposed, the District Court characterized the requirement as a "risk . . . of sufficient magnitude to place prison officials on notice." El-Tabech v. Gunter, No. CV87-L-377, slip op. at 4 (D. Neb. Aug. 23, 1994). Farmer, however, specifically rejects the idea that liability may be found when a risk is so "obvious that it should [have been] known." Farmer, 114 S. Ct. at 1978. We conclude that the District Court has yet to determine whether the defendants were subjectively aware of a substantial risk of harm to the plaintiffs, as is required by Farmer.

III.

This cause is remanded to the District Court with instructions to find whether the defendants actually knew of and disregarded a substantial risk to the safety of the plaintiffs. We retain jurisdiction over this matter in order to review the findings of the District Court on remand. That Court will certify its findings to us as soon as it makes them.

It is so ordered.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.