# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

_____

## NOS. 99-1272EA/99-2529EA

_____

| | | |
|---|---|---|
| JAMES HOWARD WILLIAMS, | * | |
| Executor of the Estate of | * | |
| Julian Vaughn Williams, | * | |
| | * | |
| Appellee, | * | On Appeal from the United |
| | * | States District Court |
| v. | * | for the Eastern District |
| | * | of Arkansas |
| KENTON KELSO, Lieutenant, | * | |
| Chief Jail Administrator; | * | |
| JOHN KOPP, Book-In Officer; MENTAL | * | |
| HEALTH RISK RETENTION GROUP; | * | |
| COUNSELING ASSOCIATES; ANDREA | * | |
| BECKER, M.S.; PETER EDWARDS, M.D. | * | |
| | * | |
| Appellants. | * | |

_____

Submitted: November 19, 1999
Filed: January 27, 2000

_____

Before RICHARD S. ARNOLD, WELLFORD[1], and BEAM, Circuit Judges.

_____

[1] The Honorable Harry W. Wellford, United States Circuit Judge for the Sixth Circuit, sitting by designation.

1

HARRY W. WELLFORD, Circuit Judge.

Plaintiff's decedent, Julian Vaughn Williams, was arrested in Faulkner County, Arkansas, on misdemeanor charges, essentially a drunken assault upon his wife, and was booked into defendant Faulkner County Detention Facility ("FCDF") on July 22, 1994. Upon arriving, Williams appeared to be "disoriented," "confused," and somewhat separated from reality, although he had short spells of coherency. Williams was placed in a cell with other misdemeanor inmates. On July 26, 1994, early in the morning after continued periods of erratic and unusual conduct, an apparent altercation broke out between Williams and another inmate after Williams experienced hallucinations and heard "voices" during the night. Williams received cuts, abrasions, bruises and related head injuries, either from a fight or from throwing himself against the cell bars.[2] Jail personnel transported him to the emergency room at the Conway Regional Medical Center ("Medical Center") where he was treated and released with instructions for further treatment at defendant Counseling Associates, Inc. ("CA").

Defendant Andrea Becker, a CA psychologist, performed a screening and mental health evaluation of Williams around 8:00 a.m. on July 26. Thereafter, defendant Peter Edwards, M.D., a psychiatrist, consulted with Becker, who deemed Williams to be suffering from intermittent psychosis, and she devised a provisional treatment plan, including separation at jail and placement in a detoxification program. It should be noted that there is disagreement between Becker and Edwards regarding the latter's recommendation; Edwards claims he advised hospitalization, monitoring, and checking vital signs every four to six hours. For purposes of summary judgment the district court assumed that Becker gave instructions at approximately 11:00 a.m. on the 26th for the jail to isolate Williams, have a nurse check his vital signs, and return him to the emergency room if his blood pressure increased. Williams was isolated but his vital signs were never checked in the nearly seven hours between Becker's instructions and Williams' death. According to the district judge, "plaintiff does not allege that the FCDF ever received instructions to watch Williams at all times." Nonetheless, FCDF personnel observed Williams throughout the day on the 26th, including around

---

[2] Williams himself told Becker that he threw himself against the jail bars, bringing about his injuries. A jail report indicated that he "jumped on his cell mate and tried to run through a metal door."

2

5:40 p.m. when FCDF Chief Administrator Lieutenant Kenton Kelso spoke with Williams.  At approximately 5:45 p.m. Kelso returned to Williams' cell to transport him to the detoxification facility that had informed Becker, around 5:00 p.m., of an availability for Williams; however, Kelso found Williams unconscious and immediately had medics alerted and began performing C.P.R.  Williams was pronounced dead on the evening of the 26th, and his death, caused by asphyxiation on toilet paper he lodged in his throat, was classified as suicide.

The two separate appeals considered herein were consolidated for argument and submission. Defendants appeal, in case number 99-1272,  the district court's denial of summary judgment on the § 1983 claim of "deliberate indifference to Williams' safety based on his initial placement with other inmates" which was asserted against Kelso, Kopp, certain named and unnamed FCDF inmates and employees, and certain unnamed CA employees.  Plaintiff claimed violations of the Eighth Amendment from Kelso's alleged failure to train and Kopp's alleged failure to protect based on his not segregating Williams upon book-in.  This court has jurisdiction over this appeal from a denial of summary judgment on qualified immunity grounds. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

In case number 99-2529 plaintiff cross-appeals from the district court's summary judgment granted to defendants on the § 1983 claim of deliberate indifference to serious medical needs based on failure to check Williams' vital signs.  Any actions alleged, or failure to act, on the part of the county officials with respect to their failure to check Williams' vital signs, including the alleged "failure to implement sufficient policy," the district court deemed to be negligence, or a "mere negligent failure," and not a constitutional violation. *See Lambert v. City of Dumas*, 187 F.3d 931, 937 (8th Cir. 1999).  This cross-appeal also challenges the district court's dismissal without prejudice of the state law claims, which plaintiff asserts form the same case or controversy as the Eighth Amendment claims, and this claim added defendants Mental Health Risk Retention Group, CA, Becker, Edwards, and certain named and unnamed insurance companies.  Plaintiff's attempt to proceed with an interlocutory appeal was denied by this court in *Williams v. Blankenship*, No. 98-8110 EACR (8th Cir. July 20, 1998).  We have jurisdiction over this cross-appeal, because it is

3

pendent to defendants' interlocutory appeal; its issues are "inextricably intertwined" with the issues of the Fifth, Eighth, and Fourteenth Amendments, § 1983, and qualified immunity.  *See Murphy v. State*, 127 F.3d 750, 753 (8th Cir. 1997).

## I. NO. 2529

We first discuss the appeal by plaintiff on the summary judgment granted defendants on the cruel and inhuman treatment claim, regarding failure to give medical treatment in case of a known serious risk.  We review the grant of summary judgment *de novo*.  *See Buckley v. Rogerson*, 133 F.3d 1125, 1126 (8th Cir. 1998).  We examine the facts in a light most favorable to the party opposing the motion.  *See Anderson v. Liberty Lobby*, 477 U.S. 242 (1986); *Celotex Corp. v. Cattrett*, 477 U.S. 317 (1986).  Essentially, we must determine whether there is a material fact or question of law that would preclude summary judgment.  Plaintiff concedes that the burden rests upon him to show such material fact or question of law when qualified immunity is claimed, as in this case, by defendants. *See Webb v. Lawrence County*, 144 F.3d 1131, 1135 (8th Cir. 1998) (citing *Celotex*, 477 U.S. at 324).  Plaintiff's burden, then, on his federal claim of constitutional deliberate indifference under § 1983 is to "demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)).

Plaintiff contends "that there are inconsistent facts regarding the only issue in this case--Julian Vaughn Williams' medically prescribed treatment."  There is a factual dispute as to whether Becker gave jail officials, specifically Kopp, instructions to check his vital signs.[3]  The district court properly, however, presumed in plaintiff's favor that Becker did give such instructions, and about seven hours passed without Williams' vital signs being checked before his suicide.  Dr. Edwards maintained that he recommended to Becker that vital signs be checked every four to six hours.  The failure to follow

---

[3] On being pressed, Becker reiterated that she could not remember to whom she spoke at the jail about these instructions.  Kopp unequivocally denied receiving such instructions from Becker. (Nevertheless, it is undisputed that Becker did not check or follow through with a nurse (she was told) "that came by on a regular basis to meet with the inmates.").

4

this instruction over a period of about seven hours, we agree with the district court, was a matter of negligence at most; there was not a showing of deliberate indifference.

Plaintiff, in his brief, "contends that the jailors' state of mind is a factual issue for the jury to decide." However, the law requires that plaintiff make a showing of subjective awareness by the prison officials of a "*substantial* risk" of "*serious* harm" to a prisoner in order to establish an Eighth Amendment deliberate indifference cause of action, *Farmer*, 511 U.S. at 828 (emphasis added), and we determine liability under the standard enumerated in light of defendant prison officials' demonstrated "attitudes and conduct" after the July 26 injury suffered by Williams. *Helling v. McKinney*, 509 U.S. 25, 36 (1993). In this case, plaintiff has demonstrated no state of mind of Kelso or Kopp that is "more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Under Kelso's supervision, prison officials gave Williams his medication (Dilantin); placed him in the misdemeanor section of the jail; regularly observed him; when he was injured, had him examined by a hospital, a psychologist, and a psychiatrist; and were in the process of transferring him to a treatment center when the suicide occurred. Plaintiff did not show any "reckless disregard" of a known substantial risk on Kelso's or Kopp's part. *Id.* at 836.

The only contention of deliberate indifference is that vital signs were not checked for a period of over six hours. It is true that plaintiff points to expert medical testimony that it is very important to follow medical instructions in this regard; such directions are "essential." We assume that this is the case, but it was not error to determine this oversight (contested factually) to be negligence and short of deliberate indifference as a matter of law. At best, plaintiff's proof in this appeal amounts to negligent conduct, not deliberate or willful conduct on Kopp's or Kelso's part. Plaintiff did not demonstrate in this record "that prison officers actually knew of [serious medical needs] but deliberately disregarded those needs." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Williams gave no overt indication that he was a suicide risk from our examination of the record. As expressed in *Farmer v. Brennan*, 511 U.S. 825, 828 (1994), the plaintiff must show that the prison officials intentionally ignored "a substantial risk of serious harm to an inmate" to maintain a constitutional claim under the Eighth Amendment. The state of mind required is "more blameworthy

5

than negligence." *Id.* at 835. Specifically, *Farmer* indicated that careless diagnosis or treatment of known "*serious* medical needs of prisoners" is insufficient. *Id.* (emphasis added).

We are persuaded that neither defendant was demonstrated to be "deliberately indifferent" to detainee Williams' rights. *See Randle v. Parker*, 48 F.3d 301, 303 (8th Cir. 1995). A four-hour delay in medical treatment of a prisoner who had been repeatedly assaulted (unknown at the time by defendant prison officials) was held not to constitute deliberate indifference as contended by the minor prisoner in *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176 (11th Cir. 1994). There was no sufficient showing as to Kobb or Kelso that their actions with respect to segregating Williams or giving him medical treatment on July 26, after the early morning episode, were obdurate, wanton, or deliberate in any failure to supply treatment for a known serious medical need. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). Both defendants are entitled to qualified immunity and summary judgment on plaintiff's claim.

We find no case which supports plaintiff's position of a § 1983 requirement of immediate medical attention to a disoriented, confused, belligerent detainee who has the odor of alcohol about him and has been arrested on an alcohol related misdemeanor charge in the absence of any indication of harm to himself. Williams had no known history of violence or mental disorder. He spent three days and nights in the misdemeanor section of the jail, on medication, without any serious episode of harm to himself or violence toward other inmates. Defendants' actions cannot reasonably be construed as something akin to "inflictions of punishment." *Farmer v. Brennan*, 511 U.S. 825, 841 (1994). We conclude that as a matter of law, the district court did not err nor did it overlook a material factual dispute in deciding that defendants did not "consciously disregard a substantial risk of serious harm" to Williams by delaying in taking his vital signs, in light of this record. *Id.* at 839. Under these principles, we affirm the summary judgment for defendant prison officials.

It was within the sound discretion for the district court to dismiss without prejudice with a right to refile in state court the separate medical negligence and wrongful death claims against defendants Mental Health Risk Retention Group, Counseling Associates, Inc., Andrea Becker, and

6

Peter Edwards. These claims arise under Arkansas tort law and involve "distinct questions of law." We conclude, contrary to plaintiff's position, that while facts in the case against the jail defendants are intertwined with the facts of the medical malpractice claims, the two causes of action are independent and essentially separate. They are not, and we do not treat them as the "same case or controversy," though consolidated for purposes of appeal.

## II. NO. 1272

The district court declined to grant summary judgment to Kopp and Kelso for failure initially to segregate Williams based upon their failure to "supervise or train their employees and implement necessary policy for the obvious needs of its detainees," not referring Williams for a mental examination at the outset. The district court was in error in reaching this conclusion that there was an *obvious need* based upon the facts in this record. Second, neither defendant may be held liable in a § 1983 claim based upon *respondeat superior*. *See Randle v. Parker*, 48 F.3d 301, 303 (8th Cir. 1995). We review the denial of summary judgment *de novo*. *See, e.g., Hall v. Lombardi*, 996 F.2d 954, 957 (8th Cir. 1993).

Defendants claim qualified immunity, but the district court denied the defense, stating:

[T]he motion for summary judgment should be, and hereby is, denied at this time with regard to plaintiff's § 1983 claim against Kelso and Kopp alleging deliberate indifference to Williams' safety based on his initial placement with other inmates. Kopp's own statement, and the statements of other inmates, support plaintiff's claim that Kopp knew Williams was disoriented and confused, with intervening periods of coherency, upon booking in at the FCDC on July 22nd. The Court finds that plaintiff has set forth sufficient proof to raise a genuine issue of material fact regarding whether Kopp was deliberately indifferent to plaintiff's constitutional rights by failing to segregate him from the general population upon booking in. See Randle v. Parker, 48 F.3d 301 (1995) (to rise to level of constitutional deprivation, official must know of the excessive risk of harm and consciously disregard the risk). Although, the FCDC has policy in place addressing the classification and separation of inmates when there is a suspected medical or mental problem, plaintiff has also raised a genuine issue of material fact with regard to his claim that Kelso failed to adequately train officers to carry out this policy. The Court questions whether plaintiff can establish that any failure by Kelso and Kopp in this respect caused or contributed to the ultimate injury in this case, Williams' death by suicide; however, the record has not been developed on this point.

7

We find *Randle v. Parker*, 48 F.3d 301 (8th Cir. 1995), the only case cited in support of the district court's denial of summary judgment to defendants Kopp and Kelso, not to constitute authority for its action. *Randle* accurately set forth the standard for determining deliberate indifference of jail officials: "the plaintiff is required to show that 'the defendants were deliberately indifferent to his constitutional rights, either because they actually intended to deprive him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates.'" *Randle*, 48 F.3d at 303 (quoting *Andrews v. Siegel*, 929 F.2d 1326, 1330 (8th Cir. 1991). *Randle* decided that a supervisory official could not be held liable for other person's misconduct absent any "sufficient personal involvement" or "tacit authorization by him of the conduct complained of." *Id.* (citing *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993)). Under this standard we believe that as supervisors, both Kopp and Kelso were entitled to qualified immunity.

Quoting *Farmer v. Brennan*, 511 U.S. 825 (1994), *Randle* noted the following required subjective knowledge on the part of a prison official must be established for such defendant to be deemed deliberately indifferent:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Randle*, 48 F.3d at 304 (quoting 511 U.S. at 837). Under this standard, *Randle* reversed a finding of § 1983 liability under circumstances substantially more egregious than those in the instant dispute. *See also Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc) (citing *Farmer* and *Hudson v. McMillian*, 503 U.S. 1, 20 (1992) for the necessary showing of a prison official's "culpable state of mind").

This court has discussed the requisite subjective knowledge requirement of *Farmer* in light of known conditions "posing a substantial risk" or "an excessive risk to inmate health or safety." *Webb v. Lawrence County*, 144 F.3d 1131, 1135 (8th Cir. 1998); *see also Jensen v. Clarke*, 73 F.3d 808, 810 (8th Cir. 1996). Plaintiff has failed to establish either defendant was guilty of constitutional

violations as to initial treatment of Williams or with respect to taking his vital signs. Either or both may have been negligent, but such an oversight or mistake is not sufficient to make out a constitutional claim.

Plaintiff's reliance upon *Finney v. Mabry*, 534 F. Supp. 1026 (E.D. Ark. 1982), is misplaced. The district court in *Finney* merely held that Arkansas jails must provide mental health care in "certain cases" involving "the *most severely mentally* disturbed" inmates. *Id.* at 1037 (emphasis added). Judge Eisele held also that those inmates with mental and emotional conditions requiring temporary mental health care can be placed in the general jail population. *See id.* We cannot say that the Eighth Amendment in this case required defendants to recognize Williams at the outset of his jail stay to be a "most severely mentally disturbed" person. That there was no written detoxification plan at the jail was not causative for any substantial injury suffered by Williams before he received medical and psychological treatment. On July 26 Becker described Williams as "going through some type of psychosis" and heard and observed nothing about Williams that indicated he might harm himself, and she was of the view that his observed condition did not demonstrate any suicide concerns. Becker was guarded in any diagnosis of detoxification signs in Williams. She and Dr. Edwards, she said, "felt that there may be an indication that he may be going through detox." Dr. Edwards testified that he "believed that he could possibly be going into alcohol withdrawal" and that withdrawal symptoms would usually be demonstrated by a chronic drinker within seventy-two hours after the last drink. Dr. Edwards felt that alcohol withdrawal was a serious concern, a medical concern, and that checking for vital signs every four to six hours would be "reasonable," and that Williams should have been "watched." Dr. Edwards testified that there was only one detoxification unit in the State of Arkansas. Plaintiff's expert, Dr. Lawrence Miller, was of the opinion that Becker's report indicated that Williams was "delusional or maybe almost bordering on delirium," referred to alcohol withdrawal symptoms occurring, he indicated in "maybe 10 per cent of cases at most." Delirium, he said, posed major problems of "seizures and respiratory problems." At the same time, Dr. Miller did not believe such a person generally would do harm to themselves. "It's more turned outward to others. It was important to check such a person's vital signs." Dr. Miller did not believe Williams required constant observation. Conway Regional Medical Center on July 26 indicated Williams "seems a little confused

9

and mildly psychotic." In light of these initial appraisals of Williams by medical personnel, even though they may have been mistaken, we are persuaded that neither Kopp nor Kelso can be charged with deliberate indifference for not recognizing a significant or excessive risk to Williams requiring segregation or medical attention in their limited contact with him. "The question is not whether the jailers did all they could have, but whether they did what the Constitution requires." *Rellergert v. Cape Girardeau County, Missouri*, 924 F.2d 794, 797 (8th Cir. 1991).

*Defendant Kopp*

Plaintiff contends that the failure properly to classify and separate Williams initially due to his observable condition was of constitutional magnitude, and that this alleged violation under § 1983 was not only the proximate cause of his alleged beating, but also of his subsequent death by suicide. Plaintiff must demonstrate that either defendant knowingly and wrongly placed Williams in detention, and was "directly involved" in not segregating him initially, or in not calling for an immediate medical examination. *Webster v. Gibson*, 913 F.2d 510, 514 (8th Cir. 1990). Plaintiff's assertion of the factual basis of the claim against Kopp for failure to isolate Williams upon book-in is that "Kopp was the booking officer on duty who described Mr. Williams' mental state when Mr. Williams arrived at 1:15 p.m." as "disoriented, confused and removed from reality," unaware of where he was or how he arrived at the FCDF. "Kopp also noted that for the first 20 minutes, Mr. Williams had 'short periods of coherency, each lasting two to three minutes at best.'" Plaintiff avers that "[d]uring the booking process, Mr. Williams' eyes were bloodshot, he smelled of alcohol, and his movements were unsteady;" yet Kopp left the FCDF at 2:55 p.m. without informing anyone of Williams' condition, contacting a mental health professional, or classifying him as a special needs inmate. However, plaintiff admits that Kopp did not actually "book-in" Williams, who arrived at FCDF about twenty minutes prior to Kopp's shift ended, and there seems to be little dispute but that Kopp was not the booking officer on duty to assign Williams when he was first admitted into the jail, although that was one of his functions at FCDF. Kopp had very few minutes with Williams and gave him his Dilantin pill, which he brought to jail with him. Another booking officer,[4] the second shift officer, actually

_____

[4] Jail records reflect that officer Brian Leighton was the person actually booking Williams into FCDF. Becker, however, testified that Kopp indicated to her that he was the book-in officer "on

10

made the decision about cell assignment of Williams, who spent some minutes yelling and swearing in the admitting area. Kopp testified that many detainees engage in this conduct: "[h]e was not a special case," in his opinion formed after only a very short contact with Williams.[5] Kopp testified that the booking officer in this case may require some time to make a decision to decide whether a detainee were acting significantly abnormally to require special treatment.

For purposes of summary judgment we assume Kopp did not relay his detailed observations of Williams to the actual booking officer. Giving plaintiff the benefit of reasonable inferences from the evidence, we find no basis for the § 1983 claim against Kopp based on failure to segregate when Williams was initially booked. Even if Kopp were deemed to be deliberately indifferent at the outset, we find no causative connection between this failure to act and the subsequent suicide on July 26. At best, in this regard, Kopp may have been negligent for his part in the admission to jail process, but we cannot accede to plaintiff's contention that there was a material factual dispute with respect to any alleged deliberate indifference for Kopp's asserted failure to recognize that Williams suffered from a severe, or even a serious, mental condition requiring prompt medical attention or segregation and monitoring. We assume that Kopp received, as asserted by plaintiff, no specific training with regard to segregating or treating intoxicated, disoriented, partially abusive detainees. There was no plausible evidence that Williams was a threat to himself. We decline plaintiff's invitation to set a constitutional standard with respect to Kopp or any other jail official under like conditions because he did not immediately contact a mental health professional or assign special classification to such detainee involved in drunken assaultive behavior. It was, therefore, error not to grant Kopp summary judgment as to this aspect of plaintiff's claim.

---

duty" when the deceased was admitted, but she did not know if he was "the one that booked him into the jail."

[5] Kopp testified that frequently (four or five times a day) detainees or prisoner came to the jail "removed from reality" or "disoriented." He did not indicate how many were suffering from effects of recent alcohol intake.

*Defendant Kelso*

What we have stated with respect to Kopp's entitlement to summary judgment on the Eighth Amendment claim also applies to defendant Kelso. The complaint averred as to Kelso: "The trial court was correct in finding that material issues of fact remain regarding whether Kopp perceived a substantial risk, whether Kelso properly trained the FCDF employees to perceive such a risk and whether the failure to segregate Mr. Williams and refer him to a mental health professional resulted in his injuries and ultimate death." Plaintiff faults Kelso for failure to train "to identify, monitor, and refer for mental evaluations detainees exhibiting abnormal behavior," and for having "no written detoxification plan." The district court found that FCDF had some policy in place, not in writing, for detoxification of inmates; plaintiff contends that this finding was clearly erroneous, and that "Kenton Kelso abdicated his duty to Julian Vaughn Williams by consciously disregarding the risk attendant to inmates suffering from alcohol withdrawal." We find no error in the district court's finding that Kelso "had a policy in place addressing the classification and segregation of inmates when there is a suspected medical or mental problem." Kopp, the jailer, had training with respect to Arkansas jail policies generally. The failure to train claim under the facts of this case does not rise to the level of a deliberate indifference constitutional violation. There was no showing of a pattern or practice by supervisors at the jail in failing to segregate and bringing about serious harm to inmates or detainees. *Bolin v. Black*, 875 F.2d 1343 (8th Cir. 1989), a case relied upon by plaintiff for making defendants responsible for lack of training, holds instead that a supervisor may be liable only for deliberate indifference (in an inmate beating situation) or "'tacit authorization of the offensive acts.'" *Id.* at 1347 (quotations omitted). The proof in this case falls short of this mark as a matter of law. *See also Tilson v. Forrest City Police Dept.*, 28 F.3d 802, 807 (8th Cir. 1994) (reversing jury verdict for § 1983 plaintiff based on jury instructions as to liability of jail supervisor that he be shown to have "encouraged," "directly participated," "officially authorized," and/or "knowingly acquiesced in the unconstitutional conduct," or that he "knowingly refuse[d] to terminate a series of acts by others"). *Tilson* refers to the necessity of showing governmental or supervisory "custom of laxness or inaction [that is the] moving force behind the constitutional violation" under § 1983. *Id.* The facts in this

12

case, indeed, fall far short of the laxness and indifference with racial overtones demonstrated in *Tilson*, cited also by plaintiff.[6]

The standard by which this court judges the conduct of defendants Kopp and Kelso is whether they "acted with reckless disregard" of any known danger to Williams. *Mooreman v. Sargent*, 991 F.2d 472, 474 (8th Cir. 1993). Under the record before the district court neither defendant intended to deprive Williams of any constitutional right or act with "such reckless disregard." *Id.* at 474 (citing *Branchcomb v. Brewer*, 669 F.2d 1297, 1298 (8th Cir. 1982). Plaintiff failed to make a showing of a known "pervasive risk of harm" to Williams by reason of initial failure to segregate or to check vital signs during the afternoon that Williams committed suicide while awaiting transportation to a hospital. *Mooreman v. Sargent*, 991 F.2d 472, 474 (8th Cir. 1993); *see also Andrews v. Siegel*, 929 F.2d 1326, 1330 (8th Cir. 1991).

Accordingly, we **AFFIRM** the district court's summary judgment to the § 1983 defendants to the extent granted. We **REVERSE**, however, the denial of summary judgment to said defendants on the failure to segregate and to require medical examination at the time of admission of the deceased at the jail. We conclude that the § 1983 action should be **DISMISSED** as to defendants Kopp and Kelso.

A true copy.

Attest:

Clerk, U.S. Court of Appeals, Eighth Circuit.

---

[6] Nor is *Crooks v. Nix*, 872 F.2d 800 (8th Cir. 1989), cited by plaintiff, relevant in the matter of supervisory liability in a case where a long-term *pro se* prisoner sought particular medical attention and treatment for alleged serious condition and continuing pain for asserted leukemia.